UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

BEKEBAI BECKY OROROKUMA,

*Plaintiff,*

– against –

U.S. DEPARTMENT OF STATE
NATIONAL VISA CENTER (NVC),

*Defendant.*

**MEMORANDUM & ORDER**
25-cv-01788 (NCM)

**NATASHA C. MERLE**, United States District Judge:

Before the Court is the government's motion to dismiss plaintiff's complaint. *Pro se* plaintiff Bekebai Becky Ororokuma's complaint (the "Complaint") seeks an order from the Court requiring that the U.S. Department of State's National Visa Center reinstate her son as a derivative beneficiary on her visa application and process his immigrant visa application without further delays. Complaint ("Compl.") 9, ECF No. 1.[1] For the reasons stated below, the government's motion to dismiss the Complaint is **GRANTED**.

## BACKGROUND

### I.     Factual Background

Plaintiff is a Brooklyn resident and non-U.S. citizen. Compl. 7–8. She filed for a visa in the F11 visa category (*i.e.*, on the basis that she was the unmarried daughter of a U.S. citizen) on June 12, 2014. Compl. 8. Her son, Daniel Ororokuma Ubuara, was listed as a derivative beneficiary on that application. Compl. 8.

---

[1]     Throughout this Order, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

1

Plaintiff's visa application was approved on February 10, 2015. Compl. 12; Declaration of Linda N. Dus ("Dus Decl.") ¶ 5, ECF No. 14-1.[2] In total, seven months and 29 days passed between when she filed for her visa and when that visa was approved. Compl. 8; Dus. Decl. ¶ 5. A visa became available to her on July 1, 2020. Dus. Decl. ¶ 5.[3] As of that day, Ubuara was 21 years, 10 months, and 16 days old. Dus. Decl. ¶ 5.

When plaintiff filed this suit, Ubuara had not received a visa, despite being listed as a derivative beneficiary on plaintiff's approved visa application. Compl. 8. A month and a half after this suit was filed, on May 14, 2025, Ubuara executed an immigrant visa application before a consular officer at the U.S. Embassy in Cotonou, Benin. Dus Decl. ¶ 4. The consular officer denied the application. Dus Decl. ¶ 4. He determined that because Ubuara was 21 years, 10 months, and 16 days old when a visa became available to plaintiff, he was too old to qualify as a "child" when a visa became available, even after subtracting the 7 months and 29 days for which plaintiff's application was pending before it was approved, as required under the Child Status Protect Act, Pub. L. No. 107 208 (Aug. 6, 2002) ("CSPA"). Dus Decl. ¶ 4; Dus Decl. Ex. A ("Ubuara Visa Adjudication"), ECF No. 14-2. Thus, Ubuara was ineligible to receive a derivative visa under the INA. Dus Decl. ¶ 5; Ubuara Visa Adjudication.

## II.    Procedural History

---

[2]    The Court may take judicial notice of the contents of plaintiff's administrative record related to her visa. *See Akran v. United States*, 997 F. Supp. 2d 197, 203 (E.D.N.Y.), *aff'd*, 581 F. App'x 46 (2d Cir. 2014).

[3]    It is worth noting here that "USCIS's approval of a visa petition does not automatically cause the agency to issue a visa or grant lawful permanent resident status to the beneficiary of the petition; instead, the beneficiary receives a place in line to wait for a visa based upon the date" on which her application was filed and the country to which her visa is chargeable. *Schwebel v. Crandall*, 343 F. Supp. 3d 322, 324 (S.D.N.Y. 2018).

Plaintiff filed this suit *pro se* on April 1, 2025. Compl. She raised claims under the Mandamus Act and the Administrative Procedure Act requesting (1) that the court "reinstate" her son "as a derivative beneficiary" on her visa application and (2) that the court "[c]ompel the N[ational] V[isa] C[enter] to process [his] immigrant visa application without further delays." Compl. 9.

The government now moves to dismiss the Complaint, on the grounds that plaintiff's request for a prompt adjudication of her son's visa application is moot because the consular office has since reviewed Ubuara's visa application, requiring dismissal under Rule 12(b)(1), and that the consular officer's determination that he is ineligible for a visa is unreviewable, requiring dismissal under Rule 12(b)(6). Motion to Dismiss ("MTD") 6–10, ECF No. 14.

Plaintiff responds that her Complaint is not moot, because she filed it before her son received his visa interview, and the government should not be allowed to thwart this Court's ability to assess his eligibility by manufacturing a belated final consular decision. Response in Opposition to MTD ("Opp.") 1, ECF No. 16. She also adds that, in any event, the consular officer's calculation of her son's statutory age was incorrect because it did not take into account COVID-related administrative delays. Opp. 1.

The government replies that "[plaintiff's] attempt to reframe [her] case as one that relates solely to an 'erroneous calculation,' 'miscalculation,' or . . . 'misapplication of the CSPA' is plainly inconsistent with the allegations of the Complaint," which focused on obtaining adjudication of the visa application. Reply 4, ECF No. 18. Because that adjudication happened, the government argues, the case is indeed moot. Reply 4. Additionally, the government argues that the doctrine of consular nonreviewability applies even to cases where "an individual challenges policies or processes or alleges

3

failure to follow policies" Reply 5. Thus, even if the consular officer misapplied the CSPA, it asserts, that error would not be reviewable by this Court. Reply 4.

## LEGAL STANDARD

When deciding a motion to dismiss, a district court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014).[4] "The issue" on a motion to dismiss "is not whether a plaintiff will ultimately prevail" but instead whether she is "entitled to offer evidence to support the claims." *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012).

Under Rule 12(b)(1), the Court must dismiss a claim for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.*; *see also Tronchin v. Shubert Org.*, No. 23-cv-10053, 2025 WL 3535093, at *4 (S.D.N.Y. Dec. 10, 2025).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although the Court takes all factual allegations contained in the complaint as true, it does not do so for legal

---

[4]    Throughout this Order, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

Courts are required to give special consideration to litigants who are representing themselves in court. A *pro se* litigant's pleadings are held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The Court "liberally construe[s] pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (quoting *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007)).

## DISCUSSION

### I.  Mootness

To the extent that plaintiff's Complaint is aimed at undue delay, it is moot, because her son's visa application has already been adjudicated.

"Article III of the Constitution requires that an 'actual controversy persist throughout all stages of litigation.'" *Chowdhury v. United States Dep't of State*, No. 25-cv-01174, 2026 WL 1458310, at *3 (W.D.N.Y. May 14, 2026) (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013)). "A case becomes moot and ceases to have an actual controversy, however, when 'events in the world overtake those in the courtroom, and a complaining party manages to secure outside of litigation all the relief he or she might have won in it.'" *Id.* (quoting *FBI v. Fikre*, 601 U.S. 234, 240 (2024)). When that happens, "a federal court must dismiss the case." *Id.*

"[A] claim that seeks to compel a federal official to act becomes moot when the official performs the act." *Sadiku v. Dep't of Homeland Sec.*, No. 20-cv-03241, 2022 WL

5

173109, at *2 (E.D.N.Y. Jan. 18, 2022) (citing *Barrett v. United States*, 105 F.3d 793, 794–95 (2d Cir. 1996)). Under that rule, courts in this Circuit have consistently held in cases like this one that a consular official's adjudication of a visa moots a case seeking such an adjudication. *See Aizah v. Holder*, No. 12-cv-06020, 2013 WL 1282345, at *1 (E.D.N.Y. Mar. 28, 2013) ("This Court cannot mandate that USCIS adjudicate the I-130 petition, when, in fact, it has already adjudicated the I-130 petition[.]"); *Lihua Jiang v. Clinton*, No. 08-cv-04477, 2011 WL 5983353, at *3 (E.D.N.Y. Nov. 28, 2011) ("Plaintiff's claim is thus moot insofar as it seeks a writ of mandamus to order Defendants to perform duties they have already performed."); *Chowdhury*, 2026 WL 1458310, at *3 (case seeking a "final decision" with respect to petitioner's husband's visa application became moot when petitioner "in fact, received a final decision on her husband's visa application"). Here, plaintiff's son's visa application has been adjudicated. Dus Decl. ¶ 4. Thus, to the extent that plaintiff's Complaint sought such an adjudication, it is now moot.

Contrary to plaintiff's argument, plaintiff's claim is moot although she "filed this lawsuit before any immigrant-visa interview was scheduled."Opp. 2. The fundamental question is whether there remains a live controversy throughout the entirety of the lawsuit. Here, where plaintiff has already received the official action her Complaint sought, there is not. The government has "process[ed] [her son's] immigrant visa application without further delays." Compl. 6, 9; Ubuara Visa Adjudication. That is true even if "[t]he timing" of that interview "demonstrates a clear attempt to generate a post-filing consular action to invoke the doctrine of consular non-reviewability." Opp. 2; *cf. Sadiku*, 2022 WL 173109, at *2 (holding that by adjudicating the visa at issue, the government had "not thwarted [the plaintiff's] ability to obtain relief" but instead had "provided [the plaintiff] with the very relief he s[ought] to compel through litigation").

6

Thus, to the extent that plaintiff's Complaint seeks an order compelling the government to act on her son's application, that claim must be dismissed.

## II.     Consular Nonreviewability

To the extent that plaintiff's Complaint is aimed at directing the government to recognize plaintiff's son as a "child" under the CSPA, the doctrine of consular nonreviewability bars that requested relief as well.

"[M]uch could be said for the view, were we writing on a clean slate, that the Due Process Clause qualifies the scope of political discretion heretofore recognized as belonging to Congress in regulating the entry and deportation of [noncitizens]." *Galvan v. Press,* 347 U.S. 522, 530–31 (1954). But this Court does not write on a clean slate. Instead, "[f]or more than a century, [the Supreme Court] has recognized that the admission and exclusion of foreign nationals is a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Dep't of State v. Muñoz,* 602 U.S. 899, 907 (2024). Where Congress has delegated to an official the discretion to admit or deny a noncitizen, that official's decision "is final and conclusive." *Id.* at 907–08. Thus, "[b]ecause the Immigration and Nationality Act . . . does not authorize judicial review of a consular officer's denial of a visa; as a rule, the federal courts cannot review those decisions. *Id.* at 908.[5] This rule is known as the "doctrine of consular nonreviewability." *Id.*

---

[5]     The Supreme Court has recognized a narrow exception to consular nonreviewability where the visa denial at issue burdens the constitutional rights of a citizen. *Chen v. Rubio,* 158 F.4th 393, 396 (2d Cir. 2025). However, "even where it does, the citizen plaintiff cannot prevail if the government has stated a facially legitimate and good faith reason for the denial." *Id.*

It is unclear whether a legal permanent resident can invoke that exception in the same manner as a U.S. citizen. *Alhariri v. Blinken,* No. 22-cv-01036, 2025 WL 1434317,

Under that doctrine, the judiciary does "not interfere with the visa-issuing process." *Sharifi v. Blinken*, 731 F. Supp. 3d 433, 436–37 (E.D.N.Y. 2024) (quoting *Wan Shih Hsieh v. Kiley*, 569 F.2d 1179, 1181 (2d Cir. 1978)). In fact, the Second Circuit has held that the doctrine bars judicial review of any and all decisions to deny, suspend or grant an immigration visa. *Ahmed v. Bitter*, No. 23-cv-00189, 2024 WL 22763, at *5 (E.D.N.Y. Jan. 2, 2024). And for almost a century, the Circuit has held that even "[w]hether the consul has acted reasonably or unreasonably" in denying a visa is beyond the jurisdiction of a federal court. *London v. Phelps*, 22 F.2d 288, 290 (2d Cir.1927).

Accordingly, courts in this Circuit have widely held that "the doctrine [of consular nonreviewability] is broad in scope, precluding a court from reviewing a consular officer's decision even if that decision's foundation was erroneous, arbitrary, or contrary to agency regulations." *Lleshi v. Kerry*, 127 F. Supp. 3d 196, 200 (S.D.N.Y. 2015) (declining to review consular officer's conclusion that visa applicant did not meet requirements, despite plaintiff's claims that that conclusion "[could] not even withstand *prima facie* scrutiny . . . because it [wa]s patently untrue"); *Humaid v. Garland*, 714 F. Supp. 3d 201, 207 (W.D.N.Y. 2024) ("[T]he Court cannot review the visa denials even if they were based on conclusions that were erroneous, arbitrary, or contrary to agency regulations."); *Zhang*

---

at *8 (E.D.N.Y. May 19, 2025); *see also Abdo v. Tillerson*, No. 17-cv-07519, 2019 WL 464819, at *4 (S.D.N.Y. Feb. 5, 2019) ("[B]ecause neither Abdo nor Abdoulmalek is a United States citizen, the sole exception to the doctrine – which applies where a U.S. citizen has brought a constitutional claim – is not applicable"). However, even assuming for the sake of argument that they can, plaintiff does not argue that her case falls into that narrow exception, and she has not pled facts suggesting it would apply. Her allegations that she has faced "severe emotional and financial hardship due to the prolonged separation" from her son, Compl. 10, cannot sustain her claim, because the Second Circuit has recently held that there is no constitutional right to live in the United States with one's noncitizen children or parents. *Chen*, 158 F.4th at 396. And she has identified no other purported rights that have been burdened by the government's denial of her son's visa.

*v. U.S. Citizenship & Immigr. Serv.*, No. 05-cv-04086, 2005 WL 3046440, at *6 (S.D.N.Y. Nov. 8, 2005) (same).

In the specific context of the CSPA, at least two courts in this Circuit have held that they lack jurisdiction to provide declarations finding that a visa applicant qualified as a "child" under that statute. *See Ngassam v. Chertoff*, 590 F. Supp. 2d 461, 467 (S.D.N.Y. 2008); *Dong v. Ridge*, No. 02-cv-07178, 2005 WL 1994090, at *4 (S.D.N.Y. Aug. 18, 2005) (same), *dismissed sub nom. Li Qiu Dong v. Mukasey*, 284 F. App'x 856 (2d Cir. 2008). The court in *Ngassam* observed that a request for a declaration of an applicant's status as a "child" under the CSPA would be an attempt to "effectively seek a review of a consular decision by challenging its foundation." 590 F. Supp. 2d at 465–66. Accordingly, it held that such a request was barred by the doctrine of consular nonreviewability. *Id* at 466–67.

Plaintiff here argues that she "challenges the [National Visa Center's] statutory miscalculation, not a visa refusal." Opp. 3. But, as the court in *Ngassam* explained, that is a distinction without a difference in this context: plaintiff "cannot divorce her request that the court declare her [son] eligible for derivative asylum from her challenge of [the government's] decision to deny" his application. *Ngassam*, 590 F. Supp. 2d at 466. "A review and declaration as to whether or not [her son] should be considered a 'child' [under the CSPA] would inexorably propel this Court into the proscribed territory of reviewing consular visa decisions."*Dong*, 2005 WL 1994090, at *4. Such a declaration is accordingly barred by the doctrine of consular nonreviewability.

Thus, to the extent that plaintiff's Complaint seeks a judgment declaring that her son was a child under the CSPA, that claim must be dismissed as well.

## CONCLUSION

For the foregoing reasons, the government's motion is **GRANTED**, and

plaintiff's Complaint is **DISMISSED** with prejudice. The Clerk of Court is respectfully

directed to issue judgment accordingly and close the case.

**SO ORDERED.**


        _/s/ Natasha C. Merle_
NATASHA C. MERLE
United States District Judge


Dated:       July 29, 2026
               Brooklyn, New York